UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                              :

MARIA ARIAS-ZEBALLOS,            :
                              :

                  Plaintiff,    :

                              :         06 Civ. 1268 (GEL)

         v.                :

                              :        **OPINION AND ORDER**

DR. ANAMAH TAN,               :

                              :

                  Defendant.   :

                              :
---------------------------------------------------------------x

Maria Arias-Zeballos, pro se.

Betsy Lambert, New York, NY, for defendant.[1]

GERARD E. LYNCH, District Judge:

        Defendant Anamah Tan moves to dismiss pro se plaintiff Maria Arias-Zeballos's complaint, which primarily alleges breach of an oral employment contract. In the alternative, defendant moves to strike portions of the complaint, and moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Plaintiff moves to dismiss defendant's counterclaims, and in the alternative for a more definite statement pursuant to Rule 12(e). The motion to strike and both motions to dismiss will be granted in part and denied in part. Both motions for a more definite statement will be denied.

---

[1] After all of the motions here at issue were fully briefed, the law firm of Proskauer Rose LLP was substituted as counsel of record for defendant Tan, in the place of Betsy Lambert.

**BACKGROUND**

I.     Plaintiff's Allegations

Plaintiff, a United States citizen residing in New York, filed a complaint in the Supreme Court of the County of New York on January 11, 2006, alleging primarily that defendant, a citizen of Singapore, had failed to compensate plaintiff in violation of an oral employment contract.  According to the complaint, the parties agreed in 2003 that plaintiff would perform "two different and independent" jobs for defendant in exchange for a total annual salary of $60,000.  (Complaint ¶¶ 12, 14, 15.)  The first job was to assist defendant in her work as President of the International Council of Women (ICW); the second was to assist defendant in her campaign to be elected to a United Nations committee working on issues related to the Convention on the Elimination of All Forms of Discrimination Against Women ("CEDAW"), and to serve as defendant's assistant after she was elected.  (Id. ¶¶ 6, 9, 14, 16, 22, 61, 68.)  Plaintiff's responsibilities for both jobs included drafting defendant's speeches and conducting research related to the activities of the ICW and the CEDAW committee.  (See, e.g., id. ¶¶ 63, 75.)

In September of 2003, plaintiff claims, defendant informed her that although she remained committed to paying plaintiff at a rate of at least $60,000 per year, she lacked the funds to begin payment at that rate immediately.  Defendant explained that she would pay plaintiff at a rate of $2,500 per month, or $30,000 per year, with funds from a Singaporean government entity; the second half of the $60,000 salary promised to plaintiff would not be withheld altogether, but merely deferred until defendant secured additional funding from another source, which was expected to occur in 2004.  Plaintiff accepted defendant's offer.  (Id. ¶¶ 15, 67-68.)

After meeting with officials of the Singapore government in October 2003 to discuss her employment, plaintiff signed a written employment contract with defendant in November 2003 pursuant to which she agreed to assist with defendant's CEDAW-related work in exchange for a salary of $2,500 per month.  (Id. ¶ 69, Ex. A.)  The contract, which is annexed to the complaint, contains a description of responsibilities plaintiff would carry out in order to "assist Dr. Tan in her CEDAW campaign through the non-governmental channel."  (Id.)  Though at least one sentence in the contract requires plaintiff to perform ICW-related tasks, plaintiff claims that that sentence was deleted at her insistence after the contract was signed (id. ¶ 69), and that both parties understood the contract to encompass their agreement only with respect to CEDAW-related work.  The ICW-related work was to be governed separately by the parties' prior oral agreement, pursuant to which defendant had agreed to pay plaintiff an additional $30,000.  (Id. ¶¶ 15, 61, 68-69.)

The parties' relationship began to deteriorate in early July 2005, when plaintiff claims she overheard defendant screaming over the phone at one of defendant's domestic employees in Singapore.  (Id. ¶ 83.)  When plaintiff objected to what she perceived to be defendant's "discriminatory and inhumane" treatment of the employee (id. ¶ 84), defendant allegedly retaliated against plaintiff by threatening to terminate her job and by carrying out, during the following days, "a series of malicious, intentional[] actions" against plaintiff, "creating a very negative work environment"  (id. ¶ 85.  The tension between the parties culminated in a confrontation at a CEDAW meeting on July 15, 2005; according to the complaint, defendant became angry and screamed at plaintiff in the middle of the session, causing plaintiff great humiliation.  (Id. ¶¶ 88-89.)

After the July 15 confrontation, plaintiff concluded that defendant was purposefully making it impossible for plaintiff to do her job, and that defendant had no intention to pay her the additional compensation she had promised.  After consulting with the office of legal counsel at the United Nations ("UN") about the matter, she submitted a letter to the members of the CEDAW committee, detailing defendant's mistreatment of plaintiff and other employees.  (Id. ¶ 91.)  Plaintiff stopped performing any work for defendant, but attempted, at first with the assistance of counsel, to secure the compensation she was allegedly owed.  (Id. ¶¶ 92-93.)  When her efforts failed, she filed suit, alleging breach of contract, discrimination, retaliation and defamation.

II.      Defendant's Allegations

Defendant disputes plaintiff's characterization of the events, and claims that the written contract signed by the parties in 2003 encompassed the entirety of their agreement.[2]  From September 2003 to July 2005, defendant contends, plaintiff never asked for more than the $2,500 per month salary.  (Id. ¶ 25.)

Defendant also asserts counterclaims against plaintiff, alleging that the letter plaintiff delivered to members of the CEDAW committee in July 2005 contained "false and severely defamatory statements" about defendant and her work.  (Partial Answer ¶ 27.)  Plaintiff also allegedly made defamatory oral statements to UN personnel, and sent a letter containing defamatory statements to Singapore's UN ambassador.  (Id. ¶¶ 35, 37.)  In addition to her

---

[2]  Defense counsel states in a reply affirmation that the ICW-related work did not form part of the parties' agreement, and that plaintiff was simply an ICW volunteer who was never promised compensation for that work.  (Lambert Reply to Affidavit in Opp. to D. Mot. to Dismiss and Strike ("Lambert Reply") ¶ 42.)  In her Partial Answer, however, defendant suggests that the written agreement between the parties encompassed both CEDAW and ICW work.  (Partial Answer ¶ 23.)

defamation claims, defendant asserts counterclaims for intentional infliction of emotional

distress, prima facie tort, and "breach of contractual fiduciary duty."  (Id. ¶ 59 et seq.)

III.  Procedural History

After plaintiff filed her complaint in state court, defendant removed the case to this

Court, asserting diversity of citizenship.  Defendant then moved to dismiss and to strike, and

plaintiff moved to remand.[3]  While the motions were pending, defendant filed her counterclaims

against plaintiff, and plaintiff moved to dismiss those claims.

Finding that plaintiff had failed to effect proper service under New York law, this Court

denied all of the pending motions, quashed the improper service, and granted plaintiff additional

time to effect proper service.  Zeballos v. Tan, 06 Civ. 1268 (GEL), 2006 WL 1975995, at *7

(S.D.N.Y. July 10, 2006).  The Court's Opinion and Order advised the parties that the

counterclaims and both motions to dismiss, as well as the motion to strike, could be re-submitted

to the Court after plaintiff had effected service, or after defendant had waived her service

objection.  Id.  Defendant filed a waiver of her service objection on July 14, 2006, and re-

asserted her counterclaims.  Both parties sent letters re-instating their prior motions.  Though the

Court's July 10, 2006, Opinion and Order provided that the parties could submit additional

briefing if they requested and received permission from the Court, neither party sought

permission to do so.

---

[3]  After defendant's motion to dismiss and to strike was fully briefed, plaintiff submitted
a sur-reply in opposition to defendant's motion.  Defendant objected to the submission of the
additional papers.  Because the Court would reach the same conclusion on the motion to dismiss
and to strike regardless of whether the sur-reply is taken into consideration, the Court need not
resolve whether it was properly submitted.

After receiving notice that the parties were willing to attempt to settle at least some of their claims, the Court referred the matter to Magistrate Judge Kevin F. Fox for a settlement conference.  The conference, which took place on August 22, 2006, was unsuccessful.

## DISCUSSION

Resolution of the pending motions has been complicated and delayed in part by both parties' inclusion of lengthy, irrelevant and redundant arguments and exhibits in their submissions to the Court.  The Court's resolution of the issues pending before it has not been aided by the excessive repetition of factual allegations appearing in the complaint; nor does the inclusion of ad hominem attacks enhance the persuasiveness of the parties' arguments.

Much of the problem has been the parties' failure to understand the standard on a motion to dismiss for failure to state a claim.  When considering such a motion, the Court must accept as true all of the non-moving party's factual allegations and draw all reasonable inferences in the non-moving party's favor.  Oteze Fowlkes v. Adamec, 432 F.3d 90, 95 (2d Cir. 2005).  The claims (or counterclaims) may be dismissed only if it appears beyond doubt that the party asserting them can prove no set of facts in support of her claim which would entitle her to relief. Id.  Similarly, in the absence of an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all of the non-movant's "averments of jurisdictional facts."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).

Thus, a party may not defeat a motion to dismiss merely by repetitious insistence that her factual allegations are true and that her adversary's account is false.  Similarly, affidavits from third parties to support or deny facts alleged in the complaint cannot affect the Court's

disposition of a motion to dismiss for failure to state a claim.  The truth of competing accounts of the facts can only be determined at trial.[4]  At this stage, the Court must accept the truth of the factual allegations in the pleadings asserting claims, regardless of whether either party proffers affidavits or other evidence.

The Court is aware that plaintiff is proceeding without a lawyer.  Even a pro se plaintiff, however, must make some effort to ascertain what is relevant at a given stage of the proceedings.  At a minimum, litigants, including pro se litigants, must refrain from excessive repetition and irrelevant, ad hominem attacks on their adversaries.  All parties, moreover, must comply with the Court's Individual Rules.  These Rules are available at http://www.nysd.uscourts.gov/Individual _Practices/Lynch.pdf.  Both parties have violated those rules here by submitting excessively long motion papers.[5]

II.  Defendant's Motion to Dismiss

A.  Personal Jurisdiction

"In a diversity case a federal court may exercise personal jurisdiction over a party in accordance with the law of the forum state." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996); see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).  Thus, to determine whether personal jurisdiction over defendant exists here,

---

[4]  Some portions of plaintiff's submissions suggest an erroneous belief that the Court may grant her final relief on her causes of action at this stage.  (See, e.g., Affidavit in Opp. to D. Mot. to Dismiss at 26.)  This is incorrect.  Though the Court denies in part defendant's motion to dismiss, plaintiff still bears the burden of producing evidence to support the surviving claims, and defendant still has an opportunity to produce evidence in her defense.  Absent a settlement or default judgment, plaintiff may not be granted relief unless she prevails at the summary judgment stage or at trial.

[5]  Parties may not circumvent these rules by attaching affidavits to their memoranda of law, particularly where the affidavits contain extensive legal arguments.

the court must first determine whether New York law would confer jurisdiction to reach the defendant on the New York state courts.  Id.  If jurisdiction would exist under New York law, the Court must proceed to consider whether New York's exercise of jurisdiction would be permissible under the Due Process Clause.  Id.

The plaintiff carries the burden of demonstrating that the court may exercise jurisdiction over the defendant.  DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986).  However, where, as here, a "court chooses to rely on pleadings and affidavits" rather than conduct an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant."  Id.; see DiStefano, 286 F.3d at 84.  This requires "an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant."  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (alteration in original) (citation and internal quotation marks omitted); see Holey Soles Holdings, Ltd. v. Foam Creations, Inc., 05 Civ. 6939 (MBM), 2006 WL 1147963, at *3 (S.D.N.Y. May 1, 2006).  In the absence of an evidentiary hearing, the pleadings "are construed in the light most favorable to the plaintiff."  Id.

New York Civil Practice Law and Rules § 302 provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary [who] transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y.C.P.L.R. § 302(a)(1).  The transacting-business element is satisfied where a defendant has "purposely availed [himself or herself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its

laws." <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 104 (2d Cir. 2006) (citation and internal quotation marks omitted).

To determine whether the exercise of personal jurisdiction comports with due process, the Court first asks whether defendant "has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Bank Brussels Lambert</u>, 305 F.3d at 127 (alterations in original) (citation and internal quotation marks omitted). If plaintiff's claims relate to defendant's contacts with New York, "minimum contacts" exist if defendant "purposefully availed [herself] of the privilege of doing business in [New York] and could foresee being haled into court [here]." <u>Id.</u> (citation and internal quotation marks omitted). The second part of the due process analysis asks whether the assertion of jurisdiction "is reasonable under the circumstances of the particular case." <u>Id.</u> at 129 (citation and internal quotation marks omitted).

Here, the exercise of jurisdiction over defendant clearly comports with § 302(a)(1) and with the Due Process Clause. Defendant acknowledges that she hired plaintiff in connection, at a minimum, with defendant's CEDAW committee activities, and that these activities required regular, extensive stays in New York. (D. Affidavit in Opp. to P. Mot. to Remand ¶¶ 1-2, 4; <u>see also</u> Partial Answer ¶¶ 20-23.) The written contract, moreover, explicitly contemplates that plaintiff would assist defendant with professional activities that defendant would carry out in New York. (<u>See</u>, <u>e.g.</u>, Complaint Ex. A, Annex A (requiring plaintiff to "work out the budget needed to organise the tea or luncheon meetings where [defendant] will speak in New York").) According to the complaint, the parties worked together frequently on ICW and CEDAW matters at New York locations during plaintiff's employment, including the United Nations and

a Manhattan apartment owned by defendant.  (See, e.g., Complaint ¶¶ 83, 88-89; see also Affidavit in Opp. to D. Mot. to Dismiss at 17.)  In view of these undisputed facts and detailed allegations, defendant's objections to the court's exercise of personal jurisdiction are entirely without merit.

B.  Failure to Comply with Federal Rule 8(a)(2)

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff's complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Defendant asks the Court to dismiss the complaint for failure to comply with this requirement.

Dismissal based on failure to comply with Rule 8(a)(2) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); see also Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004).  That is not the case here. Though plaintiff's complaint, consisting of twenty five single-spaced pages plus exhibits, is unnecessarily long and repetitive in light of the nature of her claims, the true substance of the allegations is sufficiently clear, and defendant's "ability to understand or to mount a defense" is not so "overwhelm[ed]" as to warrant dismissal.  Id.  Accordingly, the motion to dismiss for failure to comply with Rule 8(a)(2) is denied.[6]

C.  Discrimination and Retaliation

Reading the complaint liberally, the only act of illegal discrimination alleged is defendant's mistreatment of her maids in Singapore on the basis of their race or national origin, as well as retaliation against plaintiff in New York for protesting the allegedly discriminatory

---

[6] Defendant also makes passing references to the formalities required by Federal Rules 10 and 11.  The motion to dismiss for the purported violation of those Rules is denied.

treatment.  Defendant is correct that plaintiff's failure to exhaust her administrative remedies

dooms her discrimination and retaliation claim under Title VII of the Civil Rights Act.  See

Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).

Liberally construed, however, plaintiff's complaint may also be read as asserting claims

under 42 U.S.C. § 1981 and the New York Human Rights Law ("NYHRL"), neither of which

contain an administrative exhaustion requirement.  See Lumhoo v. Home Depot USA, Inc., 229

F. Supp. 2d 121, 136 n.12 (E.D.N.Y. 2002); Oteri-Harkins v. City of New York, 97 Civ. 2309

(JG), 1998 WL 817689, at *6 (E.D.N.Y. Feb. 5, 1998); Gilani v. Nat'l Ass'n of Secs. Dealers,

Inc., 96 Civ. 8070 (SS), 1997 WL 473383, at *10 (S.D.N.Y. Aug. 19, 1997); see also McEachin

v. McGuinnis, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well-established that the failure in a

complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.

Factual allegations alone are what matters." (citation and internal quotation marks omitted)).

The § 1981 claim must nevertheless be dismissed, however, because § 1981 does not

apply extraterritorially to protect defendant's foreign employees in Singapore.  See, e.g.,

Ofori-Tenkorang v. Am. Int'l Group, Inc., 460 F.3d 296, 303-06 (2d Cir. 2006) (holding that 42

U.S.C. § 1981 does not apply extraterritorially).  For similar reasons, plaintiff's Title VII claim

would be barred even if she had exhausted her administrative remedies.  See Torrico v. IBM

Corp., 213 F. Supp. 2d 390, 399 (S.D.N.Y. 2002) (noting that Title VII applies to United States

citizens working abroad for United States employers, but not foreign citizens working abroad,

even if they work for United States employers).  Though plaintiff alleges that defendant

retaliated against her — a United States citizen living and working in the United States — for

objecting to the discrimination abroad, discriminatory retaliation is only prohibited by Title VII

and § 1981 where the underlying conduct to which a plaintiff objects is itself prohibited, or where the plaintiff has a good faith, *reasonable* belief that the conduct is prohibited.  See, e.g., Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998); Kauffman v. Maxim Healthcare Servs., Inc., 04 Civ. 2869 (TCP), 2006 WL 1983196, at *5 (S.D.N.Y. July 13, 2006); Ayton v. Lenox Hill Hosp., 93 Civ. 6601 (BSJ), 1997 WL 10000, at *4 (S.D.N.Y. Jan 10, 1997). That is not the case here.

Any claim under the NYHRL also must fail.  While that statute may prohibit discriminatory conduct taking place in New York even where the victim of the discrimination works abroad, see Torrico, 213 F. Supp. 2d at 407 n.11, defendant's alleged discrimination against her domestic employees in the instant case involved discriminatory policies that were created and carried out in Singapore.  Though defendant is alleged to have made phone calls from New York to punish her maids for violating the discriminatory policy defendant established in Singapore, the phone calls do not, considering all the circumstances, create a sufficient connection to New York to bring the discrimination against the maids within the purview of the NYHRL.[7]  Plaintiff's retaliation claim fails because it would not have been reasonable for her to believe that New York state discrimination law governed defendant's employment relationship

---

[7]  Torrico v. IBM Corp., 213 F. Supp. 2d 390 (S.D.N.Y. 2002), and Torrico v. IBM Corp., 319 F. Supp. 2d 390 (S.D.N.Y. 2004), are not to the contrary.  Torrico involved allegations that New York based employees of a New York corporation had taken discriminatory actions in New York against an employee of the corporation who had been sent from New York to work on an assignment abroad.  See, e.g., id. at 399.  The underlying alleged discrimination in the instant case, in contrast, involves Singapore-based household employees of an individual citizen of Singapore, whose employment does not have the slightest connection to New York and whose employer's limited connections to New York are entirely unrelated to her employment of the alleged victims of discrimination in Singapore.  There is no credible argument that the NYHRL governs the employment relationship between a Singapore citizen and domiciliary and her domestic employees in Singapore.

with the maids at her home in Singapore.  See Butler v. Raytel Med. Corp., 98 Civ. 6446 (SJ),
2004 WL 1961522, at *2 (E.D.N.Y. Aug. 24, 2004).

      D.  Parol Evidence Rule

      Defendant argues that any claims based on the alleged oral contract should be dismissed
pursuant to the parol evidence rule, which bars "all evidence of prior or contemporaneous
negotiations or agreements offered to modify or contradict the provisions" of an integrated
written contract between the parties.  Point Developers, Inc. v. FDIC, 921 F. Supp. 1014, 1019
(E.D.N.Y. 1996); see also Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002)
("[A] written agreement that is complete, clear and unambiguous on its face must be enforced
according to the plain meaning of its terms.").  Accepting plaintiff's allegations as true and
drawing all reasonable inferences in plaintiff's favor, the Court finds that the parol evidence rule
does not bar the oral contract claim.

      The parol evidence rule only applies where the written agreement is complete and
"integrated," that is, where the agreement is "one which represents the entire understanding of
the parties to the transaction."  Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming
Corp., 269 F. Supp. 2d 206, 213-14 (S.D.N.Y. 2003).  Here, however, it is difficult to accept
defendant's argument that the written contract was integrated, because defendant has implicitly
conceded that the parties' employment relationship extended beyond the narrow terms of the
written agreement.  Specifically, defendant argues that the "one contract" into which the parties
entered governed their relationship for two years (Lambert Reply ¶ 39), despite the fact that the
written contract on which she relies was explicitly limited to only *one year* of employment.  (See

13

Complaint Ex. A. (providing that the contract would be in effect only from "1 September 2003 to 15 August 2004").)

The parol evidence rule is also limited to contract provisions that are unambiguous. See Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc., 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) ("If the terms are ambiguous or contradictory, . . . the rule permits the consideration of [parol] evidence . . . to ascertain the true meaning of the terms.")  Here, defendant's own submissions to the Court suggest that the written contract contains fundamental ambiguities going to the heart of the parties' dispute.  For example, though the affidavit submitted by defense counsel in support of the Motion to Dismiss and to Strike avers that "there was a written contract in place that specifically anticipates . . . that plaintiff pro se will do work that involves the UN-CEDAW committee and ICW work" (Lambert Affidavit in Support of Mot. to Dismiss and to Strike ("Lambert Affidavit") ¶ 2), a reply affidavit submitted by the same attorney states that plaintiff's ICW-related work "was always voluntary and neither the Defendant nor anyone representing her ever agreed to compensate the Plaintiff pro se for work for that charitable organization."  (Lambert Reply ¶ 42.)

Even assuming these inconsistencies could be explained or disregarded, however, the Court still could not find the written contract to be integrated as a matter of law.  Where, as here, the parties' written agreement does not contain a merger clause, the court determines whether the agreement is integrated "'by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.'"  Id., quoting Braten v. Bankers Trust Co., 456 N.E.2d 802, 804 (1983) (additional citation omitted); see Myskina v. Conde Nast Publ'ns., Inc, 386 F. Supp.

2d 409, 415-16 (S.D.N.Y. 2005); Wayland Inv. Fund, LLC, 111 F. Supp. 2d at 454.  Factors to

consider in deciding whether a contract is integrated include:

> whether the document in question refers to the oral agreement, or
> whether the alleged oral agreement between the parties is the sort
> of complex arrangement which is customarily reduced to writing;
> whether the parties were represented by experienced counsel when
> they entered into the agreement; whether the parties and their
> counsel negotiated during a lengthy period, resulting in a specially
> drawn out and executed agreement, and whether the condition at
> issue is fundamental; if the contract, which does not include the
> standard integration clause, nonetheless contains wording like "in
> consideration of the mutual promises herein contained, it is agreed
> and covenanted as follows," and ends by stating that "the
> foregoing correctly sets forth your understanding of our
> Agreement."

Morgan Stanley High Yield Secs., Inc., 269 F. Supp. 2d at 214 (citations omitted); see Adler &

Shaykin v. Wachner, 721 F. Supp. 472, 477 (S.D.N.Y. 1988).

These factors are highly fact-dependent, and at this stage the Court must view the facts in

the light most favorable to the plaintiff.  In that light, the relevant factors support the conclusion

that the written contract in the instant case is not a complete, integrated agreement.  On the facts

alleged by plaintiff, there is nothing complex about the alleged oral contract; plaintiff was not

represented by counsel when she entered the written agreement; the parties did not produce a

"drawn out" agreement after a lengthy negotiation period; the alleged condition at issue —

payment for plaintiff's ICW-related work for defendant — is not in any way "fundamental" to

the CEDAW work explicitly governed by the written contract; and there is no language in the

contract that remotely resembles a merger clause or that otherwise suggests that the contract is

integrated.

Moreover, even if the written contract were fully integrated, plaintiff's oral contract claim could survive under the "collateral agreement" exception to the parol evidence rule. This exception allows consideration of an oral agreement extrinsic to an integrated agreement where the oral agreement is (1) a collateral agreement which (2) does "not contradict express or implied provisions of the written contract," and (3) which is not a contract that "parties would . . . ordinarily be expected to embody in the writing"; that is, "it must not be so clearly connected with the principal transaction as to be part and parcel of it." Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 356 (S.D.N.Y. 2005) (citations and internal quotation marks omitted); see Myskina, 386 F. Supp. 2d at 416; Mitchill v. Lath, 160 N.E. 646, 647 (N.Y. 1928); Namad v. Salomon Inc., 147 A.D.2d 385, 387 (1st Dep't 1989); see also DDCLAB Ltd. v. E.I. DuPont De Nemours and Co., 03 Civ. 3654 (GBD), 2005 WL 425495, at *5 (S.D.N.Y. Feb. 18, 2005) ("[T]wo entirely separate contracts, each based on independent consideration, may be made at the same time and be entirely distinct legally." (citation and internal quotation marks omitted)). Accepting as true plaintiff's allegations and drawing all reasonable inferences in plaintiff's favor, the oral contract alleged to exist here could satisfy these conditions, given that it governs a set of responsibilities that are distinct from plaintiff's CEDAW-related work and does not contradict any provision of the written agreement. Moreover, because plaintiff's compensation for ICW-related work, according to the complaint, was not to be funded by the same source that paid for plaintiff's CEDAW-related work, one would not necessarily expect that the CEDAW-related contract would embody plaintiff's ICW-related responsibilities.[8]

_____

[8] Though the Court need not analyze the issue here, it is also possible that the parol evidence rule is rendered inapplicable, in whole or in part, by the fact that, according to the complaint, defendant repeatedly promised plaintiff, *after* the written contract was signed, that defendant would pay her additional compensation in consideration for plaintiff's continued work

E.  Defamation

Though defendant asks the Court to dismiss all of plaintiff's claims, she does not address any of her arguments to plaintiff's claim for defamation, except to say that the allegations of defamation are untrue.  (See, e.g., Lambert Reply ¶ 23.)  Accordingly, to the extent defendant moves to dismiss that claim, the motion is denied.

II.  Defendant's Motion to Strike and Motion for a More Definite Statement

A.  Motion to Strike

Defendant moves to strike a large portion of plaintiff's complaint, arguing that many of the allegations are redundant, immaterial, and/or scandalous.  Though Federal Rule of Civil Procedure 12(f) permits the Court to strike portions of a complaint for these reasons, motions to strike are "generally disfavored."  Slue v. N.Y. Univ. Med. Ctr., 409 F. Supp. 2d 349, 374 (S.D.N.Y. 2006) (citation and internal quotation marks omitted); see also Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").  A defendant moving to strike portions of a complaint must "'state with particularity'" the grounds for her motion and "'set forth the nature of relief or type of order sought.'"  Kutzle v. Thor Indus., Inc., 03 Civ. 2389, 2003 WL 21654260, at *3 (N.D. Ill. July 14, 2003), quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990); see Fed. R. Civ. P. 7(b) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, . . . shall state with particularity the grounds therefor, and shall set forth the relief or order

─────────

on ICW-related projects.  (E.g., Complaint ¶ 78); see Backer v. Lewit, 180 A.D.2d 134, 138 (1st Dep't 1992) ("[T]he parol evidence rule has no application to a subsequent agreement or subsequent oral modification of a written contract which is supported by new consideration." (citations omitted)).

sought."); see also Crawford v. Sch. Dist. of Philadelphia, 98 Civ. 1851, 1998 WL 288288, at *2 (E.D. Pa. 1998) ("Motions to strike . . . will only be granted when the movant clearly show[s] that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." (second alteration in original) (citation and internal quotation marks omitted)); cf. Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 579 (2d Cir. 1969) ("[T]he motion to strike was much too general in that it did not specify which parts of the . . . affidavit should be stricken and why. . . . [T]he motion to strike must be precise."). For the most part, defendant has failed to meet that burden here.

1.   Motion to Strike for Immateriality and Redundancy

While plaintiff's complaint is certainly repetitive, defendant's papers in support of her motion to strike suffer from the same flaw, and provide no meaningless guidance that could help the Court determine which paragraphs of the complaint are appropriate to eliminate as redundant or immaterial.  An affidavit submitted by defense counsel, for example, asks the Court to strike *all* paragraphs in the complaint as redundant and immaterial except paragraphs 1 through 5. (Lambert Affidavit ¶ 16.)  Granting such a request would require the Court to strike all paragraphs describing plaintiff's causes of action, as well the paragraphs containing plaintiff's relatively short prayer for relief.  The only paragraphs remaining would be a few short paragraphs with information regarding the parties' residence, citizenship and places of business; one paragraph identifying defense counsel; and one paragraph suggesting that the parties entered into a contract.  (Complaint ¶¶ 1-5.)  Clearly, this is not the only information relevant to plaintiff's claims.

Such a sweeping, indiscriminate motion to strike, without any explanation as to how or why the targeted paragraphs are immaterial or redundant, does not contain the requisite

"particularity" or otherwise "clearly" show that an order to strike is warranted.  Cf. Perma

Research and Dev. Co, 410 F.3d at 579 ("[P]laintiff was required to do more than swing its

bludgeon wildly. . . . [T]he motion to strike must be precise.").  Moreover, because it seeks to

strike virtually the entire complaint, defendant's motion to strike is effectively indistinguishable

from her motion to dismiss for violation of Rule 8(a)(2), which the Court has already denied.

Accordingly, the motion to strike for immateriality and redundancy is denied.

        2.   Motion to Strike Scandalous Information

     Defendant's motion to strike "scandalous" materials from the complaint is slightly more

focused.  Rather than citing almost the entire complaint, defendant identifies specific allegations

she considers improper.  She argues, for example, that the complaint improperly refers to (1)

defendant's personal wealth, (2) the amount defendant paid for an apartment, and (3) the fact that

defendant hired a personal trainer.  (Lambert Affidavit ¶ 17.)  With respect to the payment

defendant allegedly made for an apartment and the allegation that defendant hired a personal

trainer, the motion to strike will be granted.  These allegations regarding defendant's personal

affairs have no conceivable relationship to the merits of any of the claims or counterclaims.

     In all other respects, the motion to strike scandalous allegations is denied.  Though

general allegations regarding defendant's wealth are not pertinent to plaintiff's claims, they

are relevant to defendant's counterclaims.  Indeed, in support of her counterclaims, defendant

has herself submitted to the court statements made by plaintiff regarding defendant's wealth;

defendant claims that the statements are "defamatory in nature."  (Partial Answer ¶¶ 27-28.)   By

incorporating these statements into her counterclaims, defendant forfeits any argument that

identical statements in plaintiff's submissions must be stricken from the record.

Defendant also claims that paragraphs 3, 4, 8, 12, 13, 15, 23-27, 30, 31, 33-56, 68, 69, and 71-94 of the complaint should be stricken as scandalous.  It is impossible to make sense of this claim, as the cited paragraphs include numerous factual allegations and requests for relief that could not be considered scandalous or otherwise prejudicial under any reasonable standard; the cited paragraphs also include information that defendant herself has provided to the Court. (Compare, e.g., Complaint ¶ 3 (providing defense counsel's name and address), with D. Mot. to Dismiss and to Strike at 1 (same).)  The request to strike such statements is frivolous.

Accordingly, except to the extent that the complaint refers to defendant's personal trainer or the amount she paid for her apartment, defendant's motion to strike the complaint's allegations as "scandalous" is denied.

B.  Motion for a More Definite Statement

Where "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," Federal Rule of Civil Procedure 12(e) allows the party to "move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).  A motion under Rule 12(e) must "point out the defects complained of and the details desired."  Id.

Defendant moves for a more definite statement under Rule 12(e), arguing that paragraphs 6 through 56 of the complaint are vague and ambiguous.  (Lambert Affidavit ¶ 14).  Defendant makes no effort, however, to "point out . . . the details desired."  Fed. R. Civ. P. 12(e). Accordingly, the motion is denied.

Defendant's Rule 12(e) motion is in any event in large part frivolous.  The vast majority of the paragraphs she labels vague and ambiguous cannot be considered the slightest bit vague or ambiguous under any reasonable standard.  For example, the cited paragraphs of the complaint

include paragraphs specifying the amount of damages that plaintiff seeks for particular causes of action (Complaint ¶¶ 32, 36, 45, 56); paragraphs succinctly and clearly describing plaintiff's understanding of the parties' written contract (id. ¶¶ 19-22); and a paragraph stating, correctly, that the contract is attached as "Exhibit A" (id. ¶ 17).  Because the argument that such allegations are vague and ambiguous lacks any rational foundation, the Court cannot help but conclude that defendant's Rule 12(e) motion is the product of either extreme carelessness or a concerted effort to cause delay.

III.  Plaintiff's Motion to Dismiss Counterclaims[9]

Plaintiff's Affirmation in Support of the Motion to Dismiss the Counterclaims contains few arguments that are pertinent to the motion to dismiss, consisting instead of irrelevant attacks on defendant's character and unnecessary repetition of factual allegations plaintiff has elaborated elsewhere.  Plaintiff also vigorously disputes the truth of defendant's allegations at length; such arguments are misplaced, however, because in considering the motion to dismiss, the Court must accept defendant's allegations as true.  See Oteze Fowlkes v. Adamec, 432 F.3d 90, 95 (2d Cir. 2005).  Nevertheless, plaintiff's motion to dismiss will be granted with respect to two of the counterclaims, as those claims are meritless on their face.

A.    Motion to Dismiss the Defamation Claim

Even assuming that, as plaintiff's motion to dismiss suggests, the stringent requirements applicable to defamation claims brought by public figures would apply to defendant's defamation counterclaim, that counterclaim survives.

---

[9]  As discovery has barely begun, the Court denies plaintiff's request that it treat the Motion to Dismiss the Counterclaims as a motion for summary judgment.  (7/25/06 Arias-Zeballos Letter at 1.)

A public figure claiming defamation must prove that defamatory statements were made about her; that the statements would likely be understood as defamatory by an ordinary person; that the statements were false; and that plaintiff published the statements with actual malice, that is, with either knowledge of their falsity or reckless disregard of the truth.  Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001).[10]  Defendant's Partial Answer adequately alleges facts which, if true, support a defamation claim under this standard.

None of plaintiff's arguments compels a different conclusion.  Though plaintiff insists that the statements she made were true and made in good faith, these are factual contentions that can only be resolved at trial; for purposes of the instant motion, the Court must accept as true the allegations of the counterclaimant.  After discovery, plaintiff will have ample opportunity to argue on summary judgment or at trial that the evidence demonstrates that her statements about defendant were true, and/or that they were privileged statements made in good faith.

Plaintiff also suggests that the alleged defamatory statements were mere expressions of her opinion.  Though statements of pure opinion are not actionable under New York law, see Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006), most of the statements alleged to be defamatory here were clearly statements of fact.  See also Slue, 409 F. Supp. 2d at 370.  Other statements alleged to be defamatory here were statements of "mixed opinion, which are actionable if they imply that they are based upon facts which justify the opinion but are unknown to those reading or hearing it."  Id. (alterations, citation, and internal quotation marks omitted).

_____

[10]  Because the alleged defamatory statements involved defendant's profession, she need not allege special damages to prevail on her defamation claim.  See Slue, 409 F. Supp. 2d at 368, citing Wadsworth v. Beaudet, 267 A.D.2d 727 (3d Dep't 1999).

Plaintiff also argues that her statements were protected by the First Amendment. However, while the Free Speech Clause of the First Amendment restricts defamation actions, it does not bar those actions altogether.  See Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 100-01 (2d Cir. 2000); see also United States v. Irving, 452 F.3d 110, 120 (2d Cir. 2006).  If defendant can prove the elements of defamation described above, the First Amendment will not provide plaintiff with a defense against the counterclaim.

Accordingly, plaintiff's motion to dismiss the counterclaim for defamation is denied.

B.  Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, defendant must allege "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996), citing Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993); see Slatkin v. Lancer Litho Packaging Corp., --- N.Y.S.2d ----, 2006 WL 2884417 (1st Dep't Oct. 12, 2006).  "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (citation and internal quotation marks omitted); see Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985).

The conduct forming the basis of defendant's emotional distress claim here — e.g., plaintiff's use of negative terms to describe defendant to third parties, plaintiff's allegations of defendant's verbal abuse and illegal employment activities, and plaintiff's instigation of a lawsuit — is not so "atrocious and intolerable" as to meet the high threshold for intentional

infliction of emotional distress claims under New York law.  Druschke, 359 F. Supp. at 314; see Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001).  Moreover, New York law bars defendant's claim to the extent it is based solely on the statements forming the basis of defendant's defamation claim.  See Demas v. Levitsky, 291 A.D.2d 653, 660 (3d Dep't 2002) ("[A] cause of action alleging intentional infliction of emotional distress should be dismissed where the conduct complained of falls well within the ambit of other traditional tort liability." (citation and internal quotation marks omitted)).  Accordingly, the counterclaim for intentional infliction of emotional distress is dismissed.

C.  Prima Facie Tort

To state a claim for prima facie tort, defendant must allege "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series . . . of acts which are otherwise legal."  Cardo v. Bd. of Managers, 29 A.D.3d 930, 931 (2d Dep't 2006) (alteration in original) (citation and internal quotation marks omitted).  The allegation of special damages is a "critical element" of the cause of action, and may not by satisfied merely be alleging "the physical, psychological, or financial demands of defending a lawsuit."  Id. (citations and internal quotation marks omitted).  The special damages, moreover, "must be alleged with sufficient particularity to identify actual losses, [and] round sums without any attempt at itemization are insufficient."  Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005).

Defendant fails to allege special damages, claiming instead that the damages "are unknown yet at this time but exceed an amount of $250,000."  (Partial Answer ¶ 58.)  This is insufficient to state a claim for prima facie tort.

24

Furthermore, it is clear that the prima facie tort claim is predicated primarily on the allegedly malicious instigation by plaintiff of a lawsuit against defendant.  This is not a proper basis for a prima facie tort claim.  See Curiano v. Suozzi, 63 N.Y.2d 113, 118 (1984) ("New York courts have consistently refused to allow retaliatory lawsuits based on prima facie tort predicated on the malicious institution of a prior civil action."); id. at 119 ("To permit [the] action to continue under these circumstances would create a situation where litigation could conceivably continue *ad infinitum* with each party claiming that the opponent's previous action was malicious and meritless.").  Moreover, to the extent defendant seeks relief for the alleged defamatory statements, she must rely on her defamation cause of action rather than pleading a duplicative claim for prima facie tort based on the very same statements.  See id. at 118-19 (noting that litigants may not use prima facie tort claims to avoid the "stringent requirements" for "traditional torts," and explaining that prima facie tort claims "should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs" (citation and additional internal quotation marks omitted)).

Accordingly, defendant's counterclaim for prima facie tort is dismissed.

D.  Breach of Fiduciary Duty

Under New York law, "'[i]t is well settled that an employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties.'"  Slue, 409 F. Supp. 2d 373-74 (alteration in original) (emphasis omitted), quoting Wallack Freight Lines, Inc. v. Next Day Express, Inc., 273 A.D.2d 462 (2d Dep't 2000).  Defendant alleges that plaintiff breached her duties to defendant by disclosing to third parties confidential personal and professional information about defendant and her work with the CEDAW committee.  Plaintiff presents no colorable argument to dismiss this counterclaim; nor does the Court's independent review of

25

defendant's pleadings suggest that the claim should be dismissed.  Accordingly, the motion to dismiss the counterclaim for breach of fiduciary duty is denied.[11]

## CONCLUSION

For the foregoing reasons, the motion to strike and both motions to dismiss are granted in part and denied in part.  Both motions for a more definite statement are denied.  If either party moves for a reconsideration of this Opinion — which the Court strongly discourages — any submission in support of the motion (or in opposition thereto) must be limited to five pages, double-spaced.  By separate order issued today, this case will be referred to Magistrate Judge Fox for general pretrial matters.

SO ORDERED.

Dated: New York, New York
      October 26, 2006

                                  _____
                                    GERARD E. LYNCH
                                United States District Judge

---

[11]  Referring to paragraph 61 of defendant's Partial Answer, plaintiff argues that the reference to plaintiff's "misappropriat[ion]" of defendant's private personal and business information "is such a broad accusation that unless [defendant] details the very specifics of it, it is not even possible for Plaintiff to address it."  (P. Mot. to Dismiss Counterclaims at 21.)  Construing this as a motion pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement, the Court denies plaintiff's motion.  While the cited allegation is somewhat vague, it is not "so excessively vague and ambiguous as to be unintelligible and as to prejudice the [plaintiff] seriously in attempting to answer it."  Leepson v. Allan Riley Co., Inc., 04 Civ. 3720 (LTS), 2006 WL 2135806, at *6 (S.D.N.Y. July 31, 2006) (citation and internal quotation marks omitted); see also id. ("[M]otions for a more definite statement are generally disfavored because of their dilatory effect . . . . The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings." (second alteration in original) (citations and internal quotation marks omitted)).  There is thus no basis for requiring further pleading by defendant.

defendant's pleadings suggest that the claim should be dismissed.  Accordingly, the motion to dismiss the counterclaim for breach of fiduciary duty is denied.[11]

## CONCLUSION

For the foregoing reasons, the motion to strike and both motions to dismiss are granted in part and denied in part.  Both motions for a more definite statement are denied.  If either party moves for a reconsideration of this Opinion — which the Court strongly discourages — any submission in support of the motion (or in opposition thereto) must be limited to five pages, double-spaced.  By separate order issued today, this case will be referred to Magistrate Judge Fox for general pretrial matters.

SO ORDERED.

Dated: New York, New York
      October 26, 2006

GERARD E. LYNCH
United States District Judge

---

[11]  Referring to paragraph 61 of defendant's Partial Answer, plaintiff argues that the reference to plaintiff's "misappropriat[ion]" of defendant's private personal and business information "is such a broad accusation that unless [defendant] details the very specifics of it, it is not even possible for Plaintiff to address it."  (P. Mot. to Dismiss Counterclaims at 21.)  Construing this as a motion pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement, the Court denies plaintiff's motion.  While the cited allegation is somewhat vague, it is not "so excessively vague and ambiguous as to be unintelligible and as to prejudice the [plaintiff] seriously in attempting to answer it."  Leepson v. Allan Riley Co., Inc., 04 Civ. 3720 (LTS), 2006 WL 2135806, at *6 (S.D.N.Y. July 31, 2006) (citation and internal quotation marks omitted); see also id. ("[M]otions for a more definite statement are generally disfavored because of their dilatory effect . . . . The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings." (second alteration in original) (citations and internal quotation marks omitted)).  There is thus no basis for requiring further pleading by defendant.